UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 22 CR 398 |
| v. | Judge Steven C. Seeger |
| MALIK WILLIAMS | |

**UNITED STATES' SENTENCING MEMORANDUM
AND OBJECTION TO THE PSR**

The United States of America, by ANDREW S. BOUTROS, United States

Attorney for the Northern District of Illinois, respectfully recommends that the

Court accept the findings and calculations in the Presentence Investigation Report

(PSR), with the one exception discussed below, and sentence defendant Malik

Williams to a sentence of 135 months' imprisonment. This sentence would be at the

high end of the Guidelines-recommended range of 108 to 135 months as calculated

by the government.

## I.    STATEMENT OF FACTS

The PSR, including the Government's Version of the Offense, accurately

summarizes the facts and circumstances material to defendant's offense of

conviction.  R. 72 (PSR) at 6–13.  Defendant has not contested those facts.

On May 27, 2022, defendant drove to a gas station at the intersection of

Marquette Road and Halsted Street in Chicago with a gun.  *Id.* at 9.  He waited

there for 14 minutes, walked to the corner of the intersection, and fired the gun at a

minivan that was driving through the intersection. *Id.* Individuals in the minivan returned fire, and a bystander who was filling up gas in his work van was shot in the leg. *Id.*

This all happened on a busy Friday afternoon. *See Id.*; Government's Version of the Offense, Ex. 2–4 (security footage showing time of shooting as 16:10, that is 4:10 p.m.). The intersection was busy with cars, and the gas station had multiple individuals present, including a woman who was mere feet from defendant when he fired at the minivan. Gov. Ver. Ex. 2–4. Defendant fired twice, and then his gun jammed. Gov. Ver. Ex. 3–4.



*Still image from Gov. Ver. Ex. 4 showing defendant shooting*

2

A frantic scene ensued as defendant ducked down behind the work van to clear the jam in his gun. Gov. Ver. Ex. 2, 4. The woman that had been standing next to him when he fired ran away. *Id.* The bystander who was caught in the crossfire hobbled to the back of his van on his injured leg, where he and the woman briefly collided. Gov. Ver. Ex. 2. The shooting victim pulled himself into the back of the van to hide. *Id.* In clearing the jam, defendant dropped two live rounds of ammunition on the ground, before running back to his vehicle and speeding away. Gov. Ver. Ex. 2–4.

The security footage from the gas station shows defendant's actions clearly. He arrived at the gas station in a Nissan Murano SUV at 3:54 p.m., and pulled in front of a gas pump. Gov. Ver. Ex. 1. Defendant was not there to fill up his tank or buy anything at the gas station store—he never did either. Instead, he sat in the Nissan, waiting. At 4:09 p.m., approximately fifteen minutes after arriving, defendant opened the driver's door, and walked straight for the intersection. Gov. Ver. Ex. 2—4. He had the gun in his waistband, ready to shoot. Defendant walked calmly, but deliberately, looking straight towards the intersection. When he reached the edge of the gas station lot closest to the intersection, he took out the gun, and fired at the minivan. *Id.* The security footage shows the other people at the gas station reacting to defendant's gun shots, and not a moment before. *Id.* In the seconds after defendant fires, the minivan can be seen driving through the intersection, and the sliding door opens. Gov. Ver. Ex. 4.

3



*Still image from Gov. Ver. Ex. 4 showing minivan door opening*

The sequence is clear: defendant shot at the minivan, and the individuals in the minivan returned fire.

II.     **CALCULATION OF GUIDELINES SENTENCE**

The PSR calculates defendants' offense level and criminal history category at 24 and II, which would make his Guidelines imprisonment range 57 to 71 months. PSR at 110. The government agrees with defendant's receipt of credit for acceptance of responsibility and the PSR's calculation of his criminal history score, but objects to the base offense level assigned in the PSR.

4

The PSR correctly determined that the Cross Reference in U.S.S.G. §2K2.1(c)(1)(A) applied, because the defendant used the ammunition cited in the offense of conviction in connection with the attempted commission of another offense, and the offense level resulting from that other offense—attempted murder—is greater than that which would otherwise attach based on §2K2.1. *Id.* at 22. The PSR correctly looks to the Guideline for attempted murder, §2A2.1(a), but applies the wrong subsection of that Guideline. *Id.* at 23. Section 2A2.1(a) instructs that the base offense level is "(1) **33**, if the object of the offense would have constituted first degree murder; or (2) **27**, otherwise." The PSR puts the base offense level at 27. *Id.* It should be 33, because the object of the offense would have constituted first degree murder.

Application note 1. to U.S.S.G. §2A2.1 provides the relevant definition: "'***First degree murder***' means conduct that, if committed within the special maritime and territorial jurisdiction of the United States, would constitute first degree murder under 18 U.S.C. § 1111."

That statute reads in relevant part, "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or [felony murder], is murder in the first degree. Any other murder is murder in the second degree."

Defendant's conduct straightforwardly would have been murder in the first degree had defendant been successful in killing an individual in the minivan.

Defendant perpetrated the attempt by lying in wait, one of the enumerated means that qualifies a murder as first degree. Defendant's conduct was also willful, deliberate, malicious, and premeditated, a conclusion that can be inferred from his actions and the circumstances of the offense. *See United States v. Brown*, 518 F.2d 821, 826 (7th Cir. 1975) ("Of course the mental processes of [a murderer] are wholly subjective and cannot be proved directly, but premeditation may be established by adducing evidence from the facts and circumstances surrounding the killing"). Just the brief recitation of facts in the PSR is enough to draw the conclusion that this was first-degree murder:

> [D]efendant drove a silver Nissan Murano to a gas station. After approximately 14 minutes, the defendant exited his vehicle and walked towards the intersection of Marquette and Halsted in Chicago. The defendant removed a handgun from his waistband and pointed it at a passing minivan, which has [sic] multiple individuals inside. The defendant fired the gun twice towards the minivan, and occupants of the minivan returned gunfire towards the defendant.

PSR at 9. But the security footage from the gas station really drives the facts and inescapable inferences home. Defendant pulls in front of a gas pump, but does not buy gas. Instead, he sits in the Nissan for fifteen minutes before he exits the car. And when he does exit, he goes straight to the intersection, looking at the location where he would shoot moments later. He was armed with the gun that he had brought to the gas station for just this purpose. When he saw what he was looking for, the minivan that he knew was coming, he pulled out the gun and fired. This was premeditated attempted murder.

There are no other plausible explanations for what happened. This was not a "heat of passion" attempted murder. He had not just come upon an unfaithful lover, or gotten in a shouting match that caused him to lose his temper. It was not accidental, or even merely reckless. Defendant calmly walked to the spot where he knew he would have the chance to kill a rival, and he attempted to do so. Even if defendant had simply decided that he wanted to shoot and kill a random person, his actions would still qualify as first-degree murder had he succeeded. Premeditation does not require an elaborate plan or days of mulling it over. The time it took him to walk from the Nissan to the intersection would have been enough to make this premeditated. But we can easily infer that this was not random. The occupants of the minivan shot back within seconds, and opened the sliding door of a minivan to do so. They were ready for a gunfight that day, defendant just got the jump on them by lying in wait at the gas station.

The Seventh Circuit's analysis in *United States v. Bell*, 819 F.3d 310 (7th Cir. 2016) is useful here, even though the case is in a different posture. There, the court interpreted 18 U.S.C. § 1111 in the context of an attempted murder prosecution instead of a Guidelines calculation, but the definition of first-degree murder is the same. The jury in *Bell* had to convict Bell by evidence beyond a reasonable doubt, whereas the Court here of course need only find facts by a preponderance of the evidence. *See United States v. Galvin*, 44 F.4th 1008, 1011 (7th Cir. 2022) (describing preponderance standard for sentencing). In *Bell*, the Seventh Circuit upheld the jury's first-degree murder guilty verdict for a prisoner who "in a calm,

unhurried, deliberate manner," walked from his cell to another prisoner's cell while carrying a weapon, and proceeded to stab the victim to death. *Bell*, 819 F.3d at 320. The Seventh Circuit noted that,

> even if Bell had not already deliberated and settled on a design to kill Pendelton before he left the cell he shared with Dixon—which facts strongly suggest he did—he had an additional moment during his walk to Cell 105 during which to contemplate the matter, and the jury reasonably could have concluded, in light of the way events transpired, that this was an appreciable period of time during which Bell considered and settled upon what he was about to do. In short, the evidence supports the jury's determination that this was a pondered rather than a spontaneous killing.

*Id.* (quotations omitted).

In this case, the facts point to the conclusion that Williams planned to attempt murder when he showed up to the gas station, and in fact came to the gas station for that purpose. But even if the Court were to only look at his actions between leaving the car and firing the gun, it could still determine that the attempted murder was premeditated.

Applying U.S.S.G. §2A2.1(a)(1) for first-degree murder makes defendant's base offense level 33. With credit for acceptance, his total offense level becomes 30. Defendant's prior conviction for aggravated unlawful use of a firearm earns him two criminal history points, PSR at 42, and his prior conviction for criminal damage to property earns him one criminal history point, *Id.* at 40, making his criminal history score three and his criminal history category II. Altogether, correctly calculating defendant's offense level and criminal history category yields a Guidelines range of 108 to 135 months' imprisonment.

III.    **FACTORS UNDER 18 U.S.C. § 3553(a)**

The factors articulated in 18 U.S.C. § 3553(a) weigh in favor of a sentence of imprisonment of 135 months, at the high end of the correctly calculated Guidelines range. Such a sentence would account for the extreme seriousness of the offense and need for deterrence, while also considering defendant's sympathetic personal history.

**A. Nature and Circumstances and Seriousness of the Offense**

The nature and circumstances of the offense are vastly more serious than just the possession of ammunition by a felon. As serious as the bare offense is, it is increased in seriousness by the loading of that ammunition into a firearm, and vaulted to among the most serious possible offenses by the use of that ammunition in an attempted murder. Not only did defendant use the ammo to try to kill someone, in doing so he put any number of bystanders and witnesses—along with his intended victims—in mortal danger. One of those bystanders was indeed shot in the leg. While defendant did not fire the round that wounded the victim, the circumstances make clear that defendant caused the injury by initiating a gunfight in broad daylight in the middle of a busy intersection.

The second application note to the Guideline that applies in this case, U.S.S.G. §2A2.1, reads, "**Upward Departure Provision**.—If the offense created a substantial risk of death or serious bodily injury to more than one person, an upward departure may be warranted." This describes exactly the circumstances of this offense. Defendant fired twice at the occupied minivan. Had his aim been true

9

he would have killed one or more people on purpose. He also risked hitting by accident any of the other drivers on the street that day, of which there were many, or any of the bystanders standing on the sidewalk or at the gas station. Defendant's conduct also drew return fire that actually did hit someone. And this gunfight easily could have caused a car accident that harmed still more people. Everyone at that intersection that day is fortunate to be alive, including defendant.

An upward departure in this case based on the nature and circumstances of the offense would not be unreasonable. The only reason that the government does not recommend one, is because defendant's personal history is mitigating enough to make a sentence of 135 months appropriate.

### B. History and Characteristics

Defendant has a sympathetic personal history. He described being physically abused as a child by an alcoholic father. PSR at 72. That same father left when defendant was in eighth grade, *Id.* at 67, which would have been a short time before defendant pointed a handgun at someone and threatened to "blast" them, beginning his long string of interactions with the police. *Id.* at 48. Defendant has also experienced hardship as an adult, including having a hospitalized child, *Id.* at 76, and having a close friend commit suicide. *Id.* at 90. Defendant has been shot twice. *Id.* at 83.

While his difficult upbringing and trying family circumstances are mitigating, his prior gunshot wounds cut both ways. He is personally aware of the physical pain and permanent discomfort that can come from being shot, and he

nevertheless exposed numerous other people to that danger and indirectly caused one innocent bystander to be shot.

The current offense is not the first time that he has been convicted of illegal possession of a gun or ammunition. Defendant's criminal history includes a prior conviction for aggravated unlawful use of a firearm. *Id.* at 42. Defendant was on parole for that offense when he engaged in the charged conduct here. *Id.* The present offense shows that defendant is willing not only to illegally possess a gun, but to use one to try to kill. The fact that defendant was on parole, and had been released from prison less than three months prior, when he fired the gun in this case is highly aggravating. This is an aggravating factor that is no longer taken into consideration by the Guidelines, and is not reflected in defendant's criminal history category or Guidelines range. It justifies a sentence at the high-end of the Guidelines.

## C. Need for Deterrence, Providing Just Punishment, and Protecting the Public

Deterrence of felons illegally possessing firearms and ammunition is incredibly important, and this case shows why. Felons possessing firearms and ammunition pose a grave danger to the community, a danger that made itself known when defendant opened fire that spring afternoon. A sentence of 135 months will send a strong general deterrence message to other convicted felons: if they illegally possess firearms or ammunition, and especially if they use them, they can expect the federal courts to hand down just sentences equal to the seriousness of the conduct.

11

Defendant must also be specifically deterred. A long sentence is required to provide just punishment here, but it will also hopefully prevent defendant from ever picking up a gun again. A sentence of 135 months will at least protect the public from defendant for the better part of the next decade. The danger posed by defendant is not hypothetical. The public must be protected from further bloodshed.

## IV.     CONCLUSION

The United States respectfully recommends that the Court accept the facts of the PSR and Government's Version, calculate defendant's Guidelines range as described in this memorandum, and sentence defendant to a term of imprisonment of 135 months.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     */s/Paul Schied*
PAUL SCHIED
Assistant United States Attorney
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 697-4091

Dated: October 23, 2025